AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )        Case No. 3:18 CM ○6
                                                    )
INFORMATION ASSOCIATED WITH FACEBOOK )
USER NAME: ROBERT BLACK AND USER ID )
NUMBER 100014730454193 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See "Attachment A" This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Distribution of Methamphetamine |
| 21 USC 846 | Conspiracy |

The application is based on these facts:
See attached affidavit of FBI SA Justin Ledzinski

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI SA Justin Ledzinski
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11/5/18**

_____
*Judge's signature*

City and state:  Fort Smith, Arkansas

Hon. Mark E. Ford, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to all information associated with the Facebook user ID: Robert Black and ID number: 100014730454193 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

1. Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on 10/1/2018, Facebook is required to disclose the following information to the government for each user ID and ID number set forth in Attachment A, for the period between 10/1/2017, and the present:

a. All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

d. All profile information; News Feed infomlation; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.  All other records of communications and messages (to-include Facebook Messenger) made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.  All "check ins" and other location information;

g.  All IP logs, including all records of the IP addresses that logged into the account;

h.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.  All information about the Facebook pages that the account is or was a "fan" of;

J.  All past and present lists of friends created by the account;

k.  All records of Facebook searches performed by the account;

l.  All information about the user's access and use of Facebook Marketplace;

m.  The types of service utilized by the user;

n.  The length of service (including stali date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 21 U.S.C. §§ 841(a)(l) and 846, including the following information associated with the Facebook user ID and ID number set forth in Attachment A:

(a) Preparatory steps for, communications relating to, and any other actions taken in furtherance of, the transportation, shipment, receipt, possession, distribution, and production of illegal narcotics and/or controlled substances by the user of that Facebook account and any other persons;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the Facebook account, including records that help reveal the whereabouts of such person(s);

(e) All videos, photographs, or images used to facilitate or promote the transportation, shipment, receipt, possession, distribution, and production of illegal narcotics and/or controlled substances; and

(t) The identity of the person(s) who communicated with the Facebook account about matters relating to the facilitation or promotion of the transportation, shipment, receipt, possession, distribution, and production of illegal narcotics and/or controlled substances.

## III. Method of Service

1. Items seized pursuant to this search warrant can be served by sending, on any digital media device, to the Special Agent designated via email at the following address: jaledzinski@fbi.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH FACEBOOK USER NAME:
ROBERT BLACK AND USER
ID NUMBER: 100014730454193
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK
INC.

**Filed Under Seal**

## **AFFIDAVIT IN SUPPORT OF**
## **AN APPLICATION FOR A SEARCH WARRANT**

I, **JUSTIN A. LEDZINSKI**, being first duly sworn, hereby depose and state as follows:

### **INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. (Facebook), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 United States Code (U.S.C.) Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the attached Facebook user IDs. Upon receipt of the information, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have served in that capacity for over twelve (12) years. I am currently assigned to the Little Rock Office, Fayetteville Resident Agency of the FBI, and have been since November of 2007. From 2005 to 2007, I was assigned to the Laredo, Texas Resident Agency of the FBI. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have specialized training and experience in narcotics smuggling and distribution investigations. During my employment with the FBI, I have participated in numerous investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on several other search warrants. I have debriefed numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations, including those operating internationally. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses specialized in the investigation of narcotics trafficking. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. Through my training and experience, I am familiar with the operation of international drug trafficking organizations. I am familiar with the ways in which drug traffickers conduct their business – including the method and means in which they: obtain, manufacture, import, and distribute narcotics; make drug payments and

launder drug proceeds; and communicate with organizational members. My training and experience as a law enforcement officer, and my conversations with state, federal, and law enforcement officers in other countries form the basis of the opinions and conclusions set forth below.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and as such does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, Affiant submits there is probable cause to believe that violations of 21 USC 841(a)(1) and 846 have been committed, are being committed, and will continue to be committed by Robert Black, who utilizes the Facebook user account bearing Facebook user ID: Robert Black and ID number: 100014730454193. There is probable cause to search the information described in Attachment A for evidence of these crimes and contraband of these crimes, as described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses in concert with the parties listed above.

## BACKGROUND CONCERNING FACEBOOK

4. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

5. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

6. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

7. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive

Affidavit page 4

from Facebook.

8. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

9. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

10. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which

Affidavit page 5

also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

11.  If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

12.  Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

13.  Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

14.  Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

15.  Facebook Notes is a blogging feature available to Facebook users, and it enables users to write

and post notes or personal web logs (blogs), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

**16.** The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

**17.** Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

**18.** In addition to the applications described above, Facebook also provides its users with access to thousands of other applications (apps) on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

**19.** Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

20. Facebook also retains Internet Protocol (IP) logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

21. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

22. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact

Affidavit page 8

information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoi ng, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such i nform ation allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information ind icating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

23. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

Affidavit page 9

**PROBABLE CAUSE**

24. For the past several months, Agents with the FBI have been conducting an investigation concerning the drug trafficking activities of ROBERT BLACK[1], and other yet unidentified individuals, who have been distributing methamphetamine for some time in and around the area of Boone County, Arkansas. The investigation has revealed that BLACK, the user of Facebook user ID number: 100014730454193, has used Facebook Messenger (hereafter referred to as Messenger) to conduct methamphetamine trafficking activities.

25. On 9/27/2018 a preservation request was made to Facebook via the Facebook law enforcement request portal for BLACK's Messenger account bearing User ID: 100014730454193. BLACK was identified at that time as having five (5) Facebook accounts. Facebook responded to confirm the request with case #2006295.

26. On 9/28/2018 in an interview with a Confidential Informant (CI), the CI identified ROBERT BLACK as a source of methamphetamine drug (METH) supply and could purchase a pound of meth from BLACK for $6,000 or a half pound of meth for $3,000. The CI identified BLACK to law enforcement officers through Facebook. The CI explained BLACK communicated on Facebook Messenger (Messenger) with the CI. The CI would, at times, contact BLACK and explain that he/she was on the way to his residence to purchase meth. These messages were not specific but it was understood that the purpose for the visit to BLACK's residence was to purchase meth.

27. On same date, law enforcement officers met with the CI at a predetermined location for the purpose of conducting a controlled drug purchase of one half pound of meth from BLACK.

---

[1] The communications quoted throughout this affidavit are provided as a guide from affiant. They are not intended to be exact renderings, but do capture the nature of the communications between the speakers. In the event any discrepancy is perceived between the original recording and the transcript, the recording is the final authority.

Affidavit page 10

The CI did not contact BLACK to set up the controlled drug purchase. The CI and the CI's

vehicle were searched for contraband items with negative result. The CI was issued $3,000

of controlled drug purchase funds and surveillance and recording equipment. Surveillance

was conducted of the CI for the duration of the controlled drug purchase. Physical

surveillance was also conducted by Arkansas National Guard Counter Drug (ARNG) at the

residence of BLACK at 145 Mikes Road, Harrison, AR 72601.

**28.** Surveillance photographs taken by ARNG show BLACK outside of the residence at several

different times before the controlled drug purchase.

**29.** The CI subsequently met with law enforcement officers at a predetermined location and

provided approximately 163 grams of a crystal substance which field tested positive for

meth. FBI Task Force Officer (TFO) Jeff Thompson took custody of the meth which was

submitted into evidence at Boone County Sheriff's Office (BCSO). The CI also returned the

surveillance and recording equipment. The CI and the CI's vehicle were searched again for

contraband items with negative result.

**30.** Subsequent to this controlled drug purchase, the CI was instructed to set up another

controlled drug purchase with BLACK on 10/3/2018 (Wednesday) to purchase another half-

pound of meth.

**31.** On 10/1/2018, the CI sent the following Messenger message to BLACK:

Wensday..I will need to redue.

**32.** Based on my knowledge of this investigation, the CI is setting up a purchase of meth from

BLACK for the same amount the CI purchased on 9/28/2018.

**33.** On 10/2/2018, the CI held the following Messenger message conversation with BLACK:

**CI:** You ready to see me tonnite and then for the redue tmrw?

Affidavit page 11

**BLACK:** Idk why you keep putting git like that bit stop..

**CI:** Ohhhh k I'm just not trying to fuvk my dude off tomorrow I'm not trying tofick me oft tonight.

On 10/3/2018, the CI held the following Messenger message conversation with BLACK:

**CI:** U gonna come talk to me or..

**CI:** Guessing thats a no

**BLACK:** I done told ya when you want to stop all that fake ass b.s. is when ill deal with you..

**CI:** Ok im ready

**CI:** Ive had dudes $ all day hes sweating me

34. Based on my knowledge of this investigation, when the CI stated, "then for the redue tmrw? The CI is asking BLACK if he has a half-pound of meth available for the CI to purchase. The response BLACK provided, "Idk why you keep putting git like that bit stop.." indicated he did not want the CI to talk openly about the intended purchase of meth. When the CI stated, "Ive had dudes $ all day hes sweating me" the CI is telling BLACK that the CI has had money available to purchase meth (this money constituted controlled drug purchase funds).

35. On 10/3/2018 law enforcement officers attempted to purchase a half-pound of meth from BLACK for $3,000. The CI met with law enforcement officers at a predetermined location where the CI and the CI's vehicle were searched for contraband items. The CI was issued $3,000 of controlled drug purchase funds and surveillance and recording equipment. Surveillance was conducted of the CI for the duration of the controlled drug purchase. The

Affidavit page 12

CI initially went to the BLACK's residence located at 145 Mikes Road, Harrison, AR but BLACK was asleep. While at the residence, the CI met with ZACHERY MANNING who provided the CI with an 8-ball of meth. MANNING asked the CI how much meth the CI wanted to purchase to which the CI stated, "a grip" (meaning a significant amount).

36. The CI left the residence and subsequently met with law enforcement officers. The CI provided law enforcement officers a baggie containing a crystal substance which field tested positive for the presence of meth. TFO Thompson took custody of the meth which was submitted into evidence at BCSO.

37. On same date, the CI was re-issued $3,000 of controlled drug purchase funds and surveillance and recording equipment and returned to the residence at 145 Mikes Road. The CI and the CI's vehicle were searched for contraband items with negative result. While at the residence, the CI met with BLACK who explained he did not have any meth and was waiting for ZACHERY MANNING to return with the supply he could sell to the CI. The CI subsequently left the residence without completing the purchase of meth.

38. The CI met with law enforcement officers at a predetermined location and returned the controlled drug purchase funds and surveillance and recording equipment. The CI was instructed to set up another purchase of meth from BLACK on 10/10/2018.

39. On 10/8/2018, the CI sent the following Messenger message to BLACK:

"My guy will be back tmrw night by the sound of it hes gonna give me my position back"

40. Based on my knowledge of this investigation, the CI is telling BLACK that the CI will have money available again to conduct a purchase of meth (the money was actually controlled drug purchase funds).

41. On 10/9/2018, the CI had the following Messenger conversation with BLACK:

Affidavit page 13

CI: What's good any news?? Lol

BLACK: On what.?

BLACK: ??

CI: Shit anything

BLACK: Are you needing.?

BLACK: ??

42. Based on my knowledge of this investigation, the message the CI sent to BLACK, "What's good any news?? Lol" the CI is asking BLACK if he has any meth available to sell to the CI. When BLACK responds, "Are you needing.?" BLACK is asking if the CI wants to purchase an amount of meth.

43. On 10/10/2018, law enforcement officers met with the CI at a predetermined location for the purpose of conducting a controlled drug purchase of one half pound of meth from BLACK. The CI and the CI's vehicle were searched for contraband items with negative result. The CI contacted BLACK at telephone number 870-302-8371 and I recorded the call with FBI Task Force Officer (TFO) Robert Braden. In the call, the CI told BLACK they were going to his residence. The CI was issued $3,080 of controlled drug purchase funds and surveillance and recording equipment. Surveillance was conducted of the CI for the duration of the controlled drug purchase. The CI subsequently met with BLACK at 145 Mikes Road, Harrison, AR and purchased approximately 183 grams of meth for $3,000.

44. The CI departed BLACK's residence and met with law enforcement officers at a predetermined location and provided approximately 183 grams of a crystal substance which field tested positive for meth. The CI also returned $80 of controlled drug purchase funds

Affidavit page 14

and surveillance and recording equipment. The CI and the CI's vehicle were searched again for contraband items with negative result.

45. A preservation request was sent to Facebook on 9/27/2018[2], requesting preservation of any and all records related to the Facebook accounts mentioned herein. An acknowledgement of the requests were forwarded by Facebook indicating that the requests were received. Through a review of the CI's Messenger account, the aforementioned contacts with BLACK's Messenger account was attributable to user ID: 100014730454193. This User ID was one of the five (5) Facebook accounts identified as being used by BLACK. This User ID was also included in the preservation request made to Facebook on 9/27/2018.

## AUTHORIZATION REQUEST

46. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

47. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(l )(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. Additionally, the Government is seeking any evidence of user attribution such as the subscriber's full name, physical address, telephone

---

[2] A second preservation request was sent on 10/1/2018 and a third preservation request was sent on 10/26/2018.

numbers and other identifiers, IP address used to post information and e-mail addresses. This information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users which are critical in this investigation.

## **AUTHORIZATION REQUEST**

**48.** Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to search the Facebook account bearing Username: ROBERT BLACK and User ID Number: 100014730454193 for subscriber information, Facebook messages, posts, photographs, all communications sent via Facebook by or to the user(s) of that account, and any and all other evidence concerning the illegal transportation, shipment, receiving, possessing and distribution if illegal narcotics and/or controlled substances. Such information/documentation is evidence of violation(s) of Title 21 U.S.C. *§* 84l(a)(1) and 846, which relate to the knowing transportation , shipment, receipt, possession, distribution, and production of illegal narcotics and/or controlled substances.

**49.** Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**50.** I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the user of the Facebook account bearing Username: ROBERT BLACK and User ID Number: 100014730454193

Affidavit page 16

would seriously jeopardize the ongoing investigation, as such a disclosure would give that person

an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee

from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is

incorporated into the warrant, the proposed search warrant does not authorize the seizure of any

tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant

authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510)

or any stored wire or electronic information, there is reasonable necessity for the seizure for the

reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

**51.** I further request that the Court direct **FACEBOOK** to disclose to the government any

information described in Attachment B that is within the possession, custody, or control of

**FACEBOOK**. The government shall reasonably compensate **FACEBOOK** for reasonable

expenses incurred in furnishing such facilities or assistance.

Affidavit page 17

**52.** I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed pursuant to the provisions of Western District of Arkansas general rule 7. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Justin A. Ledzinski
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 5th day of November, 2018

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF ARKANSAS

Affidavit page 18